thank you your honor as the court knows we're here today to ask this court to reverse the district court's order denying plaintiffs motion for leave to file a second amended complaint the court denied the motion on the ground that plaintiffs failed to state a claim in the second amended complaint we respectfully disagree with the court's ruling and I'd like to structure my argument by focusing on a statement by the district court in which the court said quote and this is in the order denying our motion at the time plaintiffs chose to invest in Jones Soda defendants had provided almost no information about their transformational plan all plaintiffs knew was that Jones Soda had agreements to place at least one can of soda in approximately 15,700 stores close quote and that's in the excerpts of record at page 7 we respectfully disagree with that up until the beginning of what we allege as the start of the class period on March 8th 2007 that was essentially a correct statement of what Jones Soda had told the market Jones Soda starting in November 1st 2006 told the market that it was trying to get into the 66 billion CSD market the carbonated soft drink market could you could you summarize for me what are the specific contemporaneous statements that you allege were deliberately misleading at the time they were made yes your honor begin on March 8th 2007 the mr. van stock the CEO of Jones Soda said three things in total in press release and in Ernie's calls he said that Jones Soda had successfully raised 30 million dollars to help fund our future growth have they raised 31 million dollars we don't know and in this case on that statement alone it's really the statements together that are misleading and on that statement alone we don't have any reason to believe they didn't but it's what the reasonable investor would take from that in conjunction with the other statements that would require Jones Soda to make other statements so that this wouldn't be misleading in fact later Jones Soda said and they say in the brief now like we never said we'd spend that but a reasonable investor would think that's exactly what they were saying because at the same time mr. van stock said that Jones Soda had raised 30 million dollars to help fund our future growth he told the market that by that Memorial Day they the Jones Soda would have achieved over 25% ACV meaning all commodity volume essentially stores 25% of stores selling CSV that they would be in those stores and this is important this wasn't just a forward-looking hope he said quote the stores are in the process of inset and will be completed by Memorial Day that's paragraph 49 of the Second Amendment complaint at er 45 so he was telling the market at that time something that caused the markets react between November 1st and 2006 excuse me between November 1st 2006 and March 8th 2007 mr. van stock had been telling the market that we're hoping to get into this the CSD market we've got some agreements that will get us started but the market didn't react but on March 8th 2007 when he specifically named the stores the chains that Jones Soda would be in by Memorial Day and said that they were in the process of being set analysts the next day responded and said this is the long-awaited quote long-awaited news about what stores Jones Soda is going into and so when Jones Soda told the market that had 30 million dollars it and that it was it had agreements with specific chains throughout the country and that the product was being set in those stores the market understood the fundamental point that Jones Soda cans would be available for purchase that they were going on to the shelves and that that gave Jones Soda an opportunity of potential great revenue and this is an important point for us the point we're making in this complaint is in fact as was later revealed this wasn't happening in fact Jones Soda cans were not on those shelves and a company can't make money if the most basic requirement of having his product available isn't met now Mr. Vanstock continued to tell the market that Jones Soda cans were in fact on the shelves on May 3rd 2007 he said quote Jones Soda 12-ounce cans are now available across the country at major retailers including Walmart Sam's Clubs Albertsons Safeway and Target to name a few close that was that an incorrect statement yes we believe it is based on all the information available to us based on two facts if I may go one step for the honor and then come back to that and it'll give us a context in June Mr. Vanstock then told the market we achieved 21% ACV by Memorial Day we missed a Kroger Kroger's 4% we had troubles getting it set there but we achieved 21% ACV that meant to the market that Jones Soda cans were on the but on August 2 2007 for the first time in an earnings call with respect to the second quarter earnings report he said something that was very much the opposite he said you know what ship stores aren't making room the reason we're not making money from selling cans reason we're not selling cans is there now not letting us on the shelves the next year after he had left the company and a new CEO came in that CEO admitted acknowledged that Jones Soda had suffered what he called quote continuous out-of-stocks close quote between March 8 2007 what does that mean does that mean that they had a few cans on the shelf but not as many as they had hoped as we understand it it means they weren't there at all because nobody was there to put them on the shelves there are three possible ways to get the cans on the shelves in this case one is for the company itself to do it which is what other companies who are in that market do they have their own before you get to that when I asked about the statement before the one that which he said they achieved 21% you said you'd come back to it oh yes I'm sorry and we think that goes back to that but no they weren't they weren't I'll go back to the statement tell me what he said and what was untrue okay May 3rd 2007 Jones Soda's 12-ounce cans are now available across the country at major retailers including Walmart Sam's Clubs Albertson's Safeway and Target to name a few though it could mean two cans in each store the way it's worded well if then in that case your honor I would say they have an obligation to tell the market that they have an obligation to tell the market by the way we have one or two cans on the shelves you know there's not much there but that's not what he is were they were they available in and in in one or two can things were they not available or were they available in 20% we can't tell you the numbers on that you're on it not for lack of trying and this is alleged in the complaint I'm not just telling you on my own here neither IRI or Nielsen the companies that keep data like that will tell a person in my position they won't reveal it to litigants they won't in fact they won't reveal it to anybody except those who are selling the products we we call the stores they won't tell anybody we we have no information from Jones soda's own records as to what's there but what if you have if you have no information to demonstrate falsity and you have no and then you by definition have no information to demonstrate intentional deliberate falsity but we do because on August 2nd 2007 for the first time mr. van stock did a flip-flop and said you know what we haven't been able to get on these shelves they're not letting us in but the next year the new CEO let me go back to when they say they achieved 21% does that mean achieved 20 in 21% of the stores or does it mean achieved 21% of the market or what does it mean it that that's not entirely clear but from the best perspective for Jones soda even taking a non-delight most favorable to us it means 21% of the stores selling those products not that they were selling 21% of all canceled and then you say in August they said something that demonstrated that that was untrue yes he had said they were on the shelves of all the stores except Kroger which was only 4% but then on August 2nd 2007 earnings call I said oh you know what they're not letting us on those shelves we only hired two people they're not getting there and so he was admitting that in fact they weren't on the shelves he had been telling the market all along that they were on the shelves they were being sold but then he says and this is at supplemental er 72 he said oh gee the problem is they're not getting on because the stores won't let us on I see my time's up may take 20 more seconds oh shit okay and then the next year though the new CEO didn't say the retailers weren't letting them on the shelves he said we didn't have the infrastructure to do it we didn't hire the people to do it there was nobody to put them on the shelves National Beverage Corporation didn't do it because their job was only to get the cans to the distribution centers the retailers don't do it that's not how it works Jones Soda admits in his brief that it didn't have people to put the cans on the shelves there is no way to have gotten the cans on the shelves why would the retailers in the face of coke pepsi and the others who put their own cans on the shelves all of a sudden for Jones Soda take on the responsibility of shelves and that's an integral part of our claim there was no method to get them on the shelves so they couldn't have been on the shelves and then we when you tie that in with a lack of gross revenue not net revenue gross revenue it's very clear that in fact they were not selling these hands and the reason is they never got to the shelves thank you good morning your honors may it please the court my name is Douglas Green and I represent the Jones Soda defendants I'd like to clear up before I get into some remarks that I'd like to make today I'd like to clear up some confusion that just transpired on August 2nd 2007 Mr. Vince Stolk said very clearly and forthrightly that it had not achieved its 25% ACV shelving goal because Kroger who had control of its shelves had not reset its shelves in time to allow Jones Soda to achieve its 25% ACV shelving goal prior to that time Jones Soda had clearly said we had achieved 25% ACV that means 25% of the stores who sell soda had agreed to shelve its products it separately said it had a goal to achieve by Memorial Day the shelving of that soda but that that shelving was up to the retailers look like you had a question I thought that the earlier they had said the first statement was that they had a 25% contract that's right to achieve it that's right and then now you say that in sometime after May he said we have now achieved 21% of the ACV that's right that they had to Jones Soda clearly said two separate things and Judge Lasnik clearly understood and rejected the plaintiffs arguments here prior to early in 2007 Jones Soda said we have achieved agreements with retailers comprising 25% ACV separately and analysts clearly understood this in the record the record supports this it's really not debatable that separately Jones Soda said we hope to be have our cans of soda on the shelves of those 25% of the stores by Memorial Day and that didn't and then was there was a May 3rd statement that said now available that on on May 3rd Jones Soda discussed the progress of the shelving of its of its soda on the stores of retailers with whom it had agreements and they said it's now available meaning for sale and to what degree or did they say to what the company did not describe the degree to which it was on this for sale it described that it had it was in the process of being shelved but the shelving wasn't complete that was what Mr. Vance doesn't sound like now available now available sounds to me like it's on the shelves and now can be purchased it was in some instances mr. it was available for sale but in other instances in the stores that were eligible to carry it wasn't for sale and then the next statement was that it was in all stores it was accepted some of the achieved 21% what does that mean it mean it had it had been shelved at the stores that were eligible to carry Jones Soda products. How could a reasonable investor take that statement? That fully stocked you know Jones Soda has a number of different varieties of soda yeah the analysts securities analysts asked questions and the company actually answered them factually but I want to I want to get to a fundamental point here that the plaintiffs offer no facts at all about the actual shelving and availability of Jones Soda. Judge Lasnik found they offered not one single inconsistent contemporaneous fact about the actual shelving. How do they get those facts when you dismiss a complaint before they can take any discovery? The Reform Act Judge Reinhart imposes on the plaintiffs a burden without discovery to plead both a falsity in great detail and a strong inference of scienter this court in S. G. Cowan said that that is the way that they haven't alleged these facts and there's no way for them to get those facts. So we have to look just at your statement. In fact Judge Reinhart you were on the panel in Oracle and in Oracle the plaintiffs had 42 confidential witnesses who described facts about the degree of sales and the plaintiffs in other cases are able to obtain internal facts internal documents and those are pled for example in Skechers that was the case and let's go back to your statements because I agree with you that they don't have any other basis in this complaint except relying on your statements. Yes it's let me address those and these are the post class period statements that Judge Blaznik found were not sufficient to were not inconsistent with what the company said to create to satisfy the plaintiffs burden under the Reform Act to plead falsity or scienter and let's focus on the statement continuous out of stocks. That statement is made in August of 2007. The statement doesn't specify a time period. The word continuous is plainly hyperbolic. The company had revenue from can sales. The notion that the cans were not on any store shelves at all is implausible in fact it's it's it's absurd. It's simply not the case that Jones Soda had announced agreements that said it was shelving and then didn't have the shelf. The soda it's it's our it's Securities Analysts could and did go to grocery stores to check out the shelving of Jones Soda. This was this this was not something that Jones Soda could hide. I'm still trying to understand the statements which I'm not sure I have all the dates but they're about four statements in a row and I'm trying to understand what they mean. The first statement was that we have 25% ACV or whatever it is and that means that you've got contracts to put bottles on the shelves or cans on the shelves. That's the first statement that's 25% contracts for that. Then the next statement made third is that they're now available. Now what that means maybe you said that only means we've got one can in each store. Then there's a next statement is that all stores we've achieved it in all stores except one chain which has 4% which would seem to mean that we've now got them all there. Then there's another statement says well we didn't get them all there in August. We didn't achieve the 25% which I don't know how that's different from you didn't achieve you only achieved 21%. Then finally well we didn't do it at all because we didn't have people to put it on the shelves. Is that an accurate description of what the statements were? Of a certain yes Judge Reinhart it is except that the last statement that you said that we didn't do it at all is not correct. The company in 2008 was looking back on 2007 and was engaged in self-critical analysis. It was it quite forthrightly reported its quarterly results and they were frankly disappointing and the reason is they didn't sell as much canned soda as they had hoped. Well they didn't have people to put it on and I'm not saying these are your statements I'm just quoting your opposing counsel's description of them. In which case it still seems to me that you once said you had contracts you then said that they're now available. You then said that the they're all available except 4% and then the August statement which is again seems to be well they're really not available. The August statement I respectfully disagree doesn't say that all the August statement said is that we were not available in Kroger in time for Memorial Day as we had hoped. I said the statement before that I don't have the date. In May the company. The one between May and August. Between May and August yes indeed in June it was reported that Jones Soda had not achieved its Memorial Day shelving goal and that was reported in June prior to the August 2nd earnings report at which the company then in more detail as is customary at that point in time in the company's fiscal year reported in more detail the reasons and what happened the financial consequences. Your honors I'm running out of time I'm I've got another two minutes if you have something you need to say. I would be pleased to give you all day if you'd like to know I wouldn't be pleased by that. No I just want to make sure because we did take up your time by questioning you about those statements. If there's anything that you think is necessary that you can say within two minutes. I would like to try. Yes. You should affirm Judge Lasnik's denial of plaintiff's motion for leave to amend because this complaint suffers from structural problems that can't be fixed by more words. First plaintiffs challenge statements that the company didn't make. At page 8 of their reply brief plaintiffs assert that Jones Soda told investors that Jones Soda was responsible for marketing and stocking the product. Plaintiffs cite to paragraphs 110 and 118 for support. I refer you to them. They say nothing of the sort. Jones Soda didn't say that it was responsible its employees for stocking soda on shelves. Plaintiffs also suggest and this is in paragraph 113 that Jones Soda reported in early 2007 its sales and marketing employees and then reported it again one year later but nothing in between. That's in paragraph 113. That's simply not true. Jones Soda reported its sales and marketing personnel and expenditures in every single quarter. I want to address the assertion that the market was under the impression that Jones Soda would have added thousands of workers to go and stock the shelves of 15,000 grocery stores around the country is implausible. In fact, it's absurd. Iqbal says that this court should rely on its common sense. Our common sense plainly tells us that grocers stock their own shelves. If plaintiffs were right that every single manufacturer and producer had armies of people stocking grocery store shelves, there wouldn't be enough room for shoppers. I also want to note that the plaintiffs take statements and that they have an argument that Jones Soda misled the market about the resources it was expending on this can rollout. Plaintiffs take statements that are plain vanilla statements about Jones Soda hiring people and spending money. And they spin those statements and in Judge Lasnik's words, create plaintiffs' wishful thinking about what the statements actually said. But all Jones Soda said was what it was actually doing. The securities laws impose liability if what you actually say is actually false or misleading. And here it plainly wasn't. I want to say two more things if I may, very quickly. Number one is there are structural flaws in this complaint, in this case, about the record that can't change that negates the enter that are antithetical to fraud. And those include that the only individual defendant, Mr. Van Stolt, as well as the former CFO during the class period, the head of sales during the class period, and then Mr. Van Stolt's successor as CEO, purchased stock or acquired stock. Their holdings increased. The CFO and the head of sales purchased stock on the open market, the former CFO did, on the open market. Antithetical to the notion that they were trying to hide anything about this can rollout. I would also add that Jones Soda has experienced business difficulties, was quite candid. Finally, I'd like to say on leave to amend, because that is the issue before this court, that Judge Lasnik's decision is abundantly correct. This is not a case like the eminence capital case. In the eminence capital case, the district judge made three errors, and they were plain. Number one. Okay, I think that's, we're going to give you about two minutes, we've given you almost four already. You have, Your Honor, I agree. This case is nothing like eminence capital. Judge Lasnik was correct in denying leave to amend, and I'd ask you to affirm. Thank you, counsel. Thank you. There are a couple factual points I'd like to make, and then I know I don't have much time, so I'll wrap it up. We'll give you an extra two minutes to almost make up to your opponents. Thank you, Your Honor. I want to make it clear that in June, John Sota said it had achieved 21% ACV. That's telling the market it's on the shelves of more than 14,000 stores across the country in major chains. These, and they had told the market originally that they were in the process of being set in 25%. That's 15,700 stores. The market reasonably understood, as reflected by analyst reports, that this meant there would be increased sales, because they would be on the shelves. At least that they would be available to the consumers. And then in August 2nd, 2007, John Sota did not say, oh, by the way, that Kroger, that the problem with Kroger is they wouldn't let us on the shelves. On SER 72, Van Stock refers to retailers, and then says as to Kroger. And says that retailers weren't letting them on the shelves. Well, whether the retailers weren't letting on the shelves, or they didn't have anybody there to put the cans on the shelves, he was admitting that these cans couldn't have been on those shelves. The retailers wouldn't let them on. And the reason he had to say that is that the earnings report showed they weren't selling cans. And he didn't blame it on people not wanting the product. He blamed it on the cans not being on the shelves, and he blamed the retailers. But that's utterly inconsistent with his statements, his consistent statements to the market that the cans were on the shelves. And it's utterly inconsistent with statements by a CEO the next year that they were continuously out of stock. And the idea that we tried, by the way, I want to make one last point here, and then I'll sit down, because as with counseling the other side, I could go on forever on this. We're dealing with a small company here who is making a splash. The fact that Mr. Van Stock didn't sell stock doesn't tell you anything. As the new CEO said, his manner was one of flash and flare. And he liked to get in the spotlight and tell the market what the market wanted to hear. He was out at the end of the year. And the other point about it being a small company trying to make a splash is, there were not a lot of employees. They only hired two new employees for this new rollout, and they only admitted that in August 2nd, 2007. We tried to get confidential witnesses. There's very few employees at all. We couldn't get them. Thank you. Thank you, counsel. Case just argued will be submitted.
judges: Reinhardt, Graber, Paez